[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Hartman*, Slip Opinion No. 2020-Ohio-4440.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-4440

THE STATE OF OHIO, APPELLANT, *v*. HARTMAN, APPELLEE.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Hartman*, Slip Opinion No. 2020-Ohio-4440.]**

*Criminal law—Other-acts evidence—Evid.R. 404(B)—Other-acts evidence must prove something other than a defendant's disposition or propensity to commit certain acts and must be probative of a proper particular purpose for which it is offered—Other-acts evidence must be excluded under Evid.R. 403(A) when its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury—A trial court's limiting instruction to a jury regarding its consideration of other-acts evidence should be narrowly tailored to state the specific purpose for which the evidence is being offered.*

(No. 2019-0184—Submitted February 25, 2020—Decided September 22, 2020.)

APPEAL from the Court of Appeals for Cuyahoga County,

No. 105159, 2018-Ohio-2641.

_____

**DeWine, J.**

{¶ 1} Mitchell Hartman was accused of raping an adult female acquaintance in her hotel room after they had spent the evening out with a group of friends. He claimed that the hotel encounter was consensual. To counter his claim and support its version of events, the state presented "other acts" evidence that Hartman had sexually abused his stepdaughter when she was a child. A jury found Hartman guilty of the crimes, but the court of appeals reversed, concluding that the other-acts evidence should not have been admitted. We agree and affirm the judgment of the court of appeals.

## I. Hartman Is Charged with and Convicted of Raping E.W. in 2015

### A. The 2015 Incident

{¶ 2} Hartman was put on trial for the rape of E.W. based on an incident that happened in October 2015. E.W. had taken a weekend trip to Ohio with her boyfriend Chris and another couple, Stephanie and Jeremy. On the last night of their trip, Hartman, a friend of Jeremy's, joined the group in their hotel room for drinks, and then they all went out to a bar together in downtown Cleveland.

{¶ 3} According to E.W., Hartman started flirting with her and Stephanie at the bar. She described him as "touchy-feely" and coming on too strong. Though E.W. had consumed five drinks and was feeling "a little bit of a buzz," she said that she did not feel intoxicated. Because Hartman's behavior made her uncomfortable and because they had an early flight the next morning, she decided to leave the bar and return to the hotel room. Chris walked E.W. back to the room and then left to rejoin the others. E.W. climbed into bed and fell asleep.

{¶ 4} Later, Hartman returned to the hotel, purportedly to retrieve a bookbag that he had left in the room. (Jeremy confirmed that Hartman had a bookbag with him when he had first come to the hotel room for drinks.) Because Hartman's name was not on the reservation, the employee at the hotel desk spoke to Stephanie by telephone and obtained her permission to give him a room key.

{¶ 5} E.W. testified that she did not hear Hartman enter her room and was awakened by him putting his penis in her mouth. E.W. said that at first, she began to reciprocate the act, believing that the person standing next to the bed was her boyfriend Chris. When she opened her eyes and realized it was Hartman, she screamed, and he said, "What, you're not going to finish?" She told him to get out, and he left.

{¶ 6} Immediately after Hartman left the room, E.W. called Chris, who returned to the hotel with Stephanie. A heated argument took place in the hotel room. Ultimately, the disturbance brought hotel security to the room in response to a complaint from another guest. After hotel security arrived, E.W. reported the alleged rape to police.

{¶ 7} When he became aware of the situation, Jeremy sent Hartman a text message confronting him about what had happened between Hartman and E.W. Hartman responded with a voicemail saying that he had simply grabbed his bag and left the room.

{¶ 8} The defense's theory was that the encounter between Hartman and E.W. had been consensual and that E.W. had made up the rape allegation only after her boyfriend learned that she had cheated on him. In furtherance of this theory, the defense sought to highlight certain inconsistencies in E.W.'s testimony.

{¶ 9} The defense first tried to undercut E.W.'s account of her interactions with Hartman earlier in the evening. The defense cross-examined E.W. about the video footage captured by the bar's surveillance camera, attempting to establish that it did not show any inappropriate behavior by Hartman. In addition, on cross-examination, the defense elicited testimony from Jeremy that Hartman had told him that Hartman and E.W. had kissed while at the bar.

{¶ 10} The defense also focused on discrepancies in E.W.'s account of the assault itself. At first, she said she was sleeping with her mouth open and woke up to the penis in her mouth, but she later explained that she had thought it was her

boyfriend Chris, so she opened her mouth and began to reciprocate. On direct examination, E.W. testified that she had not heard Hartman enter the room. On cross-examination, though, she conceded that she had initially told police that she had been awakened by someone entering the room and she had thought it was Chris.

{¶ 11} There was also some dispute about what happened next. E.W. initially testified that police interviewed her about the incident before she was able to see Chris. But during cross-examination, she conceded that Chris and Stephanie had come up to the hotel room before the police were called. The defense theorized that the argument that took place in the hotel room was the result of Chris believing that E.W. had been unfaithful. But Chris said that he had been upset with himself for leaving E.W. alone in the hotel room and denied that he had thought that E.W. had cheated on him. E.W. said that she had been worried that Chris would not believe her and thought he was angry at her.

## B. The Other-Acts Evidence

{¶ 12} The state's final witness was B.T., who had been victimized by Hartman—her former stepfather—as a child. (Hartman's conduct with B.T. had resulted in a plea agreement in which Hartman pleaded guilty to abduction and attempted felonious assault.) Prior to the start of trial, defense counsel sought to have B.T.'s testimony excluded as improper character evidence. He argued that the allegations involving B.T. were too distinct from those involved in the current case to have any probative value. The state countered that both assaults had occurred while the victims were sleeping and that this amounted to a "behavioral fingerprint" identifying Hartman as the perpetrator. The prosecutor also asserted that the evidence was probative of Hartman's "motive, intent, plan or scheme and absence of mistake." The crux of the state's argument was that the fact that Hartman had molested his stepdaughter while she was sleeping provided evidence that Hartman's motive for returning to the hotel room was to assault E.W.

4

Alternatively, the state contended that the evidence rebutted any "mistaken impression that this was consensual sexual activity."

{¶ 13} The trial court issued a preliminary ruling allowing the state to present the evidence. The court concluded that because both allegations involved "vulnerable, asleep victims," B.T.'s testimony was probative to show absence of mistake, Hartman's plan or scheme, and that he acted with criminal intent in this instance. The court considered the prejudicial effect of the evidence but determined that its impact could be reduced by limiting both the scope of B.T.'s testimony and the purposes for which the jury could consider the evidence.

{¶ 14} Defense counsel renewed his objection to B.T.'s testimony prior to her taking the stand. He again asserted that the purpose of the evidence was to create an impermissible character inference that Hartman has a propensity to assault sleeping females. This time, the court concluded that the evidence was probative of virtually every one of the permissible purposes listed in Evid.R. 404(B); the court cited the relevance of the evidence to "the defendant's motive, opportunity, intent, absence of mistake, purpose, preparation, plan to commit the offense, [and] knowledge of the circumstances surrounding the offense." Before B.T. testified, the court explained to the jury that her testimony could not be considered as evidence of Hartman's character or that he acted in conformity with that character, and the court further instructed:

> If you find that this evidence of other acts is true, and that the defendant committed them, you may consider that evidence only for the purpose of deciding whether it proves these limited things: A, the absence of mistake or accident; or B, the defendant's motive, opportunity, intent; or C, purpose, preparation or plan to commit the offense charged in this trial, or knowledge of circumstances surrounding the offense charged in this trial; or D, the identity of the

person who committed the offense in this trial. That evidence cannot be considered for any other purpose.

{¶ 15} B.T. then took the stand. She explained that Hartman is her mother's ex-husband. Roughly four years earlier, when she was 12, Hartman began coming into her bedroom at night while she was sleeping. On one occasion, he started touching her chest and woke her up. Another time, he entered the room and began touching her vagina. And in one instance, he pulled his pants down and forced her to touch his penis with her hand. When this happened, she asked him, "[W]hat are you doing?" He responded, "[W]hat are you doing?" And then he left.

### C. Conviction and Reversal on Appeal

{¶ 16} Following B.T.'s testimony, the state rested its case and the trial court again instructed the jury that her testimony was offered for a limited purpose. Hartman did not testify or present any witnesses. The trial court then gave the jury its final instructions—providing for a third time the same instruction it had previously given about the other-acts evidence. Four counts were presented to the jury: rape by force in violation of R.C. 2907.02(A)(2), with a sexually-violent-predator specification; rape of a substantially impaired person in violation of R.C. 2907.02(A)(1)(c), with a sexually-violent-predator specification; one count of burglary pursuant to R.C. 2911.12(A)(1); and one count of kidnapping under R.C. 2905.01(A)(4), with a sexual-motivation specification. The jury returned guilty verdicts on the two rape counts and not-guilty verdicts on the burglary and kidnapping counts. After hearing additional testimony, the jury also found Hartman to be a sexually violent predator.

{¶ 17} The Eighth District Court of Appeals reversed the convictions, concluding that the evidence of Hartman's abuse of B.T. in 2012 constituted improper other-acts evidence and was inadmissible under Evid.R. 404(B). The court of appeals acknowledged that "there are several uses for other acts evidence"

6

but went on to say that such evidence "is typically applied to questions of identity." 2018-Ohio-2641, ¶ 39. The court characterized the state's primary justification for the use of the other-acts evidence as being to establish Hartman's identity through evidence of his modus operandi. *Id.* The problem with this purported justification, the court of appeals held, was that Hartman's identity as the alleged perpetrator was not in dispute. The court also rejected the state's contention that the evidence established motive, reasoning that the motive in a sexual-assault case is self-evident. Consequently, the court determined that the other-acts evidence was not relevant to the purposes for which the state had sought to admit it and held that it had been improperly admitted. The court of appeals also concluded that the trial court had improperly given a flight instruction to the jury and decided that the cumulative effect of the errors was prejudicial to Hartman. The court therefore reversed his convictions and remanded the case for a new trial.

{¶ 18} We accepted the state's appeal on the following proposition of law: "In sexual assault cases, other acts evidence offered to prove the intent of the offender or the offender's plan is admissible pursuant to Evid.R. 404(B), even when the identity of the offender is not at issue." *See* 155 Ohio St.3d 1437, 2019-Ohio-1536, 121 N.E.3d 409. We agree that other-acts evidence can be admitted for purposes other than identity, so we acknowledge that the proposition is a correct statement of law. But because the other-acts evidence in this case was not relevant to any proper purpose, we affirm the judgment of the court of appeals that the other-acts evidence was improperly admitted at Hartman's trial.

{¶ 19} We also use this case—as well as *State v. Smith*, __ Ohio St.3d __, 2020-Ohio-4441, ___ N.E.3d ___, another case decided today—to help clear up some of the confusion that exists regarding the use of other-acts evidence. Thus, we endeavor to provide trial courts with a road map for analyzing the admission of other-acts evidence and guidance as to appropriate instructions for the jury when such evidence is admitted.

## II. The Admission of Other-Acts Evidence, Generally

{¶ 20} "A hallmark of the American criminal justice system is the principle that proof that the accused committed a crime other than the one for which he is on trial is not admissible when its sole purpose is to show the accused's propensity or inclination to commit crime." *State v. Curry*, 43 Ohio St.2d 66, 68, 330 N.E.2d 720 (1975), citing 1 *Underhill's Criminal Evidence*, Section 205, at 595 (6th Ed.1973). That philosophy is premised on our understanding of human nature: the typical juror is prone to "much more readily believe that a person is guilty of the crime charged if it is proved to his satisfaction that the defendant has committed a similar crime." *State v. Hector*, 19 Ohio St.2d 167, 174-175, 249 N.E.2d 912 (1969).

{¶ 21} This common-law principle is embodied in Evid.R. 404(B). *State v. Lowe*, 69 Ohio St.3d 527, 530, 634 N.E.2d 616 (1994). That rule provides: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." This type of evidence is commonly referred to as "propensity evidence" because its purpose is to demonstrate that the accused has a propensity or proclivity to commit the crime in question. *See Curry* at 68. Evid.R. 404(B) categorically bars the use of other-acts evidence to show propensity.

{¶ 22} Evid.R. 404(B) does, however, allow evidence of the defendant's other crimes, wrongs, or acts to be admitted "*for other purposes*, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." (Emphasis added.) The key is that the evidence must prove something other than the defendant's disposition to commit certain acts. Thus, while evidence showing the defendant's character or propensity to commit crimes or acts is forbidden, evidence of other acts is admissible when the evidence is probative of a separate, nonpropensity-based issue. The admissibility of other-acts evidence pursuant to Evid.R. 404(B) is a question of law. *See* Leonard, *The New Wigmore: Evidence of Other Misconduct and Similar Events*, Section 4.10 (2d

8

Ed.2019) (because "[d]etermining whether the evidence is offered for an impermissible purpose does not involve the exercise of discretion * * *, an appellate court should scrutinize the [trial court's] finding under a *de novo* standard" of review); *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, ¶ 17 (the trial court is precluded by Evid.R. 404(B) from admitting improper character evidence, but it has discretion whether to allow other-acts evidence that is admissible for a permissible purpose).

{¶ 23} Courts have long struggled with differentiating between the two types of evidence. This is in large part because "other-act evidence is usually capable of being used for multiple purposes, one of which is propensity." *United States v. Gomez*, 763 F.3d 845, 855 (7th Cir.2014) (en banc) (applying Fed.R.Evid. 404(b), which is substantively analogous to Ohio's Evid.R. 404(B)). For that reason, it is "not enough for the proponent of the other-act evidence simply to point to a purpose in the 'permitted' list and assert that the other-act evidence is relevant to it." *Id.* at 856. The rule is concerned not only with the ultimate justification for admitting the evidence but also "with the chain of reasoning that supports the non-propensity purpose for admitting the evidence." *Id*. To properly apply the rule, then, courts must scrutinize the proponent's logic to determine exactly how the evidence connects to a proper purpose without relying on any intermediate improper-character inferences. *Id*.

A. *Relevance for a Nonpropensity Purpose*

{¶ 24} As with all evidence, the threshold question for determining admissibility asks: is the evidence relevant? Evid.R. 402 succinctly states, "Evidence which is not relevant is not admissible." Evidence is relevant if it tends "to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401.

{¶ 25} The rule governing the admissibility of other-acts evidence does not bypass the relevancy determination. *Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, at ¶ 20 (in reviewing other-acts evidence, the "first step" is to consider the relevance of the evidence under Evid.R. 401). It is almost always true that propensity evidence will have some relevance. Indeed, such evidence is excluded "not because it has no appreciable probative value but because it has too much." 1A Wigmore, *Evidence*, Section 58.2, at 1212 (Tillers Rev.1983).

{¶ 26} But in Evid.R. 404(B) cases, the inquiry is not whether the other-acts evidence is relevant to the ultimate determination of guilt. Rather, the court must evaluate whether the evidence is relevant *to the particular purpose* for which it is offered. *See Curry*, 43 Ohio St.2d at 73, 330 N.E.2d 720. That is to say, the other-acts evidence must be probative of a "purpose other than the person's character or propensity to behave in a certain way." *Gomez,* 763 F.3d at 860. Evid.R. 404(B) provides a nonexhaustive list of the permissible nonpropensity purposes for which other-acts evidence may be introduced. In section III of this opinion, we will discuss in some detail the most common nonpropensity purposes for which other-acts evidence may be permissibly used.

{¶ 27} Trial courts must keep in mind that it is not enough to say that the evidence is relevant to a nonpropensity purpose. The nonpropensity purpose for which the evidence is offered must go to a "material" issue that is actually in dispute between the parties. *Huddleston v. United States*, 485 U.S. 681, 686, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988).

{¶ 28} One other aspect of the relevance inquiry bears mentioning. The supposition that proposed other-acts evidence, if true, would be relevant is not a license for courts to allow the jury to consider every unsubstantiated accusation. Rather, there must be some threshold showing that the act for which the evidence is offered occurred. "[S]imilar act evidence is relevant only if the jury can reasonably conclude that the act occurred and that the defendant was the actor." *Id.*

at 689. This principle flows from Evid.R. 104(B), which addresses issues of relevance conditioned on the existence of a fact. *See Huddleston* at 689-690 (applying Fed.R.Evid. 104(b), which at that time was identical to Ohio's Evid.R. 104(B)). Thus, we have held that for the evidence to be admissible, there must be "substantial proof that the alleged similar act was committed by the defendant." *State v. Carter*, 26 Ohio St.2d 79, 83, 269 N.E.2d 115 (1971).

   B. *Weighing the Probative Value and the Danger of Unfair Prejudice*

  **{¶ 29}** The analysis does not end once a proponent has established a permissible nonpropensity purpose for the admission of other-acts evidence. In every instance, the trial court must determine whether the proffered evidence—though admissible under Evid.R. 404(B)—is nevertheless more prejudicial than probative. *Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, at ¶ 20. Our rules require exclusion of evidence when its probative value "is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Evid.R. 403(A). The trial court's analysis under this rule should be robust, and courts should be mindful of "[t]he natural and inevitable tendency * * * to give excessive weight to the vicious record of crime thus exhibited and either to allow it to bear too strongly on the present charge or to take the proof of it as justifying a condemnation, irrespective of the accused's guilt of the present charge." 1A Wigmore, Section 58.2, at 1212.

  **{¶ 30}** Weighing the probative value of the evidence against its prejudicial effect is a highly fact-specific and context-driven analysis. Balancing the risks and benefits of the evidence necessarily involves an exercise of judgment; thus, the trial court's determination should be reviewed for an abuse of discretion. *See* Leonard at Section 4.10 (because the trial court is in the best position to observe the demeanor of the witnesses and jurors, "the appellate court should defer to the trial court's judgment of the weight of the various dangers as applied to each piece of evidence").

**{¶ 31}** Nevertheless, there are some important considerations for trial courts in making those determinations. The first is the extent to which the other-acts evidence is directed to an issue that is actually in dispute. "[S]ensitivity to the real factual disputes in the case is critical to meaningful Rule 403 balancing." *Gomez*, 763 F.3d at 860. The probative value of the evidence, as well as whether any prejudice is unfair, will generally depend on the degree to which the fact is actually contested. If the fact that the proponent seeks to prove by way of other acts is not genuinely disputed or material to the case, then it has little probative value and the risk of prejudice is high. *See* Imwinkelried, *The Use of Evidence of an Accused's Uncharged Misconduct to Prove Mens Rea: The Doctrines Which Threaten to Engulf the Character Evidence Prohibition*, 51 Ohio St.L.J. 593, 598 (1990); *Curry*, 43 Ohio St.2d at 70-71, 330 N.E.2d 720. As the importance of the factual dispute for which the evidence is offered to the resolution of the case increases, the probative value of the evidence also increases and the risk of *unfair* prejudice decreases.

**{¶ 32}** Courts should also consider whether the prosecution is able to present alternative evidence to prove the same fact through less prejudicial means and whether the other-acts evidence is probative of an essential element of the crime or an intermediate fact in the case. 1 Imwinkelried, Giannelli, Gilligan, Lederer & Richter, *Courtroom Criminal Evidence*, Section 908 (6th Ed.2016).

**{¶ 33}** Because other-acts evidence "almost always carries some risk that the jury will draw the forbidden propensity inference," *Gomez* at 857, it will often present the dangers that Evid.R. 403(A) seeks to protect against. Thus, when such evidence is only slightly probative of a nonpropensity theory but has a high likelihood of unfairly prejudicing the defendant or confusing or misleading the jury, the evidence must be excluded.

### C. *Minimizing the Risks of Unfair Prejudice*

**{¶ 34}** When a court determines that other-acts evidence should be admitted, it must take steps to minimize the danger of unfair prejudice inherent in the use of such evidence and to ensure that the evidence is considered only for a proper purpose. Thus, a court should explain both the specific purpose for which the evidence may be considered and the rationale for its admission on the record. Doing so will ensure that trial participants—as well as reviewing courts—are aware of the permitted use of the other-acts evidence. Further, as we explain in more detail below, an appropriate jury instruction geared toward the specific purpose for which the evidence has been admitted will help reduce the risk of confusion and unfair prejudice.

## III. The Trial Court Improperly Admitted Evidence of Hartman's Abuse of His Stepdaughter

**{¶ 35}** In this case, the state asserted numerous bases for admitting B.T.'s testimony about Hartman's abuse—that the evidence established Hartman's modus operandi, his plan or scheme, his motive, his intent, and an absence of mistake— and the trial court found the evidence probative on all of those grounds. We take up each of these purported rationales for admission of the evidence.

### A. *Modus Operandi*

**{¶ 36}** Early on, the state contended that Hartman's alleged conduct in both the 2012 and 2015 incidents was "so similar as to be called a behavioral fingerprint," thereby reflecting a modus operandi "identifiable with the defendant." The state went on, "We're not introducing this evidence to say * * * he is the kind of person who would go around assaulting sleeping females, rather that he is the person that did it." Similarly, in its briefing in this court, the state argues that the evidence was admissible to show "Hartman's modus operandi to sexually assault females while they were asleep."

**{¶ 37}** "Modus operandi" literally means method of working. *See People v. Barbour*, 106 Ill.App.3d 993, 999, 436 N.E.2d 667 (1982). It is evidence of signature, fingerprint-like characteristics unique enough "to show that the crimes were committed by the same person." Weissenberger, *Federal Evidence*, Section 404.17 (7th Ed.2019). Evidence of modus operandi is relevant to prove identity: "Evidence that the defendant had committed uncharged crimes with the same peculiar modus tends to identify the defendant as the perpetrator of the charged crime." 1 Imwinkelried et al., *Courtroom Criminal Evidence*, at Section 907. To be admissible, both the other-acts evidence and the charged crime must involve "the same distinctive, one-of-a-kind modus." *Id.*

**{¶ 38}** Here, B.T.'s testimony did not provide evidence of a modus operandi. There is nothing fingerprint-like about molesting a child in a bed during the night. Nor do the circumstances of the child molestation in this case contain any idiosyncratic features also present during the alleged rape. That both crimes were committed against a female sleeping in a bed is hardly unique to Hartman as a perpetrator.

**{¶ 39}** Furthermore, as the court of appeals correctly noted, identity was not an issue at trial. This is an acquaintance-rape case. E.W. knew who Hartman was before the assault. And during opening statements, Hartman's attorney made clear that the theory of the defense was that the sexual encounter between Hartman and E.W. had been consensual. Thus, even if B.T.'s testimony could have been labeled modus operandi evidence, it still would not have been admissible because identity was not an issue in this case.

### B. Common Scheme or Plan

**{¶ 40}** In addition to arguing that it was Hartman's modus operandi to target sleeping females, the state argues that he had a common "plan or scheme" to target sleeping women. The state uses the two concepts—modus operandi and common scheme or plan—largely synonymously, a mistake often made by litigants. In

reality, though, these two sometimes-permissible uses of other-acts evidence are distinct concepts. The utility of modus operandi evidence comes from its connection with the current crime through shared characteristics that make the conduct unique to the perpetrator. In contrast, plan evidence need not share any common characteristics with the current crime; rather, the other acts are linked to the present crime because they are carried out in furtherance of the same overall plan. Evidence of a plan or common design "refers to a larger criminal scheme of which the crime charged is only a portion." *Barbour*, 106 Ill.App.3d at 999, 436 N.E.2d 667. Thus, while modus operandi evidence is "most useful in showing that the accused is the perpetrator of the crime charged," *id.*, evidence of a common design will more often be relevant to show the motive for the crime charged, *see* McCormick, *Evidence*, Section 190, at 448-449 (2d Ed.1972).

{¶ 41} Common-plan evidence generally concerns events that are "inextricably related" to the crime charged. Weissenberger at Section 404:18; *Curry*, 43 Ohio St.2d at 73, 330 N.E.2d 720. The other acts form the "immediate background" of the present crime: they are typically either part of the "same transaction" as the crime for which the defendant is on trial or they are part of "a sequence of events" leading up to the commission of the crime in question. Weissenberger at Section 404:18. As one authority has explained, this type of other-acts evidence is admitted

> [t]o prove the existence of a larger, continuing plan, scheme, or conspiracy, of which the present crime on trial is a part. This will be relevant as showing motive, and hence the doing of the criminal act, the identity of the actor, and his intention, where any of these is in dispute.

McCormick at 448-449. Thus, plan evidence generally supports one of the following possible conclusions: "(1) the occurrence of the act in issue; (2) the identity of the person who committed the act; or (3) the existence of the required mental state in the actor." Leonard at Section 9.1.

{¶ 42} A defendant's plan might be demonstrated through evidence of "prior preparatory acts," such as the prior theft of an instrumentality used in the commission of the current crime. 1 Imwinkelried et al., *Courtroom Criminal Evidence*, at Section 907. For instance, in a prosecution for illegally manufacturing drugs under R.C. 2925.04, evidence that the defendant recently robbed a warehouse to steal a barrel of the ingredient methylamine could be admissible to show the defendant's scheme to produce methamphetamine. *See* "A No-Rough-Stuff-Type Deal," *Breaking Bad*, AMC (Mar. 9, 2008). Or consider a case in which the defendant is slated to inherit an estate if two other heirs are no longer living. *See* 1 Imwinkelried et al. at Section 907. In a trial for the murder of one heir, evidence showing that the defendant killed the other would not be admissible to demonstrate that he was a cold-blooded killer, but it could be admitted to show that he had a plan to kill the other heirs to attain the inheritance. *See id*.

{¶ 43} Here, the evidence plainly does not fit into the common understanding of plan evidence. Hartman's alleged assault of his stepdaughter was not part of a larger scheme involving the rape of E.W. Nonetheless, the state contends that the evidence was admissible as a result of our decision in *Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278.

{¶ 44} In *Williams*, we considered whether other-acts evidence tending to show a plan may be admitted when the identity of the assailant is not at issue. Although we had previously indicated that such evidence will most often be relevant to illustrate the immediate background of the offense or identify the perpetrator, *see Curry*, 43 Ohio St.2d at 73, 330 N.E.2d 720, we confirmed in

*Williams* that plan evidence is not necessarily limited to those scenarios and may be admitted for other purposes, *Williams* at ¶ 19.

{¶ 45} While the other-acts evidence in *Williams* tended to show that the defendant, who had been charged with the rape of a 14-year-old boy, had a pattern of grooming teenage boys to take advantage of them sexually, that fact alone is not what overcame the propensity bar. Rather, the result in *Williams* turned on the state's use of the other-acts evidence for the purpose of refuting the defendant's claims that he was not sexually attracted to teenage boys and establishing that the defendant had acted with the specific intent of achieving sexual gratification. *Id.* at ¶ 22, 25.

{¶ 46} There may be instances in which seemingly unrelated but highly similar crimes could be evidence of a common scheme to commit the charged crime—perhaps, for instance, a string of robberies occurring close in time and location. We stress, however, that plan evidence should show that the crime being charged and the other acts are part of the same grand design by the defendant. Otherwise, proof that the accused has committed similar crimes is no different than proof that the accused has a propensity for committing that type of crime. The takeaway for the jury becomes, "The accused did it once recently; therefore, the accused did it again." Imwinkelried, *Using a Contextual Construction to Resolve the Dispute over the Meaning of the Term "Plan" in Federal Rule of Evidence 404(b)*, 43 U.Kan.L.Rev. 1005, 1012 (1995).

{¶ 47} Here, Hartman's molestation of his stepdaughter four years prior was not linked to any overarching plan to commit rape against E.W. The incidents are wholly distinct, and unlike the common-scheme evidence demonstrated in *Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, the other-acts evidence in this case contains few similarities to the crimes charged. Thus, the evidence was not relevant to show a common scheme or plan.

### C. Motive

**{¶ 48}** The state also contends that the other-acts evidence was relevant to show Hartman's motive. Motive evidence establishes that the accused had a specific reason to commit a crime. Weissenberger at Section 404.16. For instance, "if the state argues that a defendant committed murder to cover up an earlier crime, evidence of that earlier crime may be admitted to show the motive behind the murder." *State v. Cobia*, 1st Dist. Hamilton No. C-140058, 2015-Ohio-331, ¶ 19. Or a defendant's motive in committing a theft might be to sell the stolen item to get money to buy drugs. There need be no similarity between the other-acts evidence and the crime charged under a motive theory; "a dissimilar prior act is just as feasible in supplying a motive for committing a crime as is a similar prior act." Weissenberger at Section 404.16.

**{¶ 49}** Here, the evidence plainly was not admissible for purposes of establishing motive. Hartman's molestation of his former stepdaughter does not reveal a specific reason for raping E.W. and thus does not provide evidence of any motive to commit rape beyond that which can be inferred from the commission of any rape. *See Curry*, 43 Ohio St.2d at 71, 330 N.E.2d 720 ("A person commits or attempts to commit statutory rape for the obvious motive of sexual gratification. Since motive cannot be deemed to have been a material issue at appellee's trial, 'other acts' testimony was not admissible to prove this matter").

**{¶ 50}** The state contests the court of appeals' acknowledgment that the motive in most rape cases is sexual gratification, asserting that the court ignored the extent to which the motive of a sexual perpetrator is to achieve sexual gratification by force. But however it is characterized, the point is that in most cases of this type, there is no motive beyond that implicit in the commission of the offense itself.

*D. Intent and Absence of Mistake*

{¶ 51} The trial court found the evidence admissible for purposes of showing intent and absence of mistake. The state's argument is essentially that the evidence was relevant to Hartman's defense of consent: according to the state, the prior conduct with his stepdaughter tended to prove that Hartman didn't mistakenly believe that E.W. was consenting to a sexual encounter but rather that Hartman intended to rape E.W. Because the concepts of intent and absence of mistake are similar in this formulation, we take them up together.

{¶ 52} Other-acts evidence is admissible to negate a defendant's claim of mistake or accident with respect to the commission of the alleged crime; such evidence tends "[t]o show, by similar acts or incidents, that the act in question was not performed inadvertently, accidentally, involuntarily, or without guilty knowledge." McCormick, *Evidence*, Section 190, at 804 (4th Ed.1994). In the criminal context, there are generally two ways in which the accused may raise a claim of accident. Imwinkelried, 51 Ohio St.L.J. at 593. The first involves whether a criminal act occurred at all. For example, suppose a defendant is accused of poisoning his fourth wife but claims she died of a certain natural cause. Evidence that his first three wives died with nearly identical symptoms might be permissible to show that the fourth wife's death was the result of a poisoning. Under this theory, the evidence could be admissible because the circumstances of the wives' deaths are so similar that it is improbable all four women died of natural causes.

{¶ 53} The second scenario implicates the intent of the accused. The question here is not whether the act occurred but whether the defendant acted with a criminal intent. Say, for instance, the fourth wife died from a gunshot wound at the hand of her husband during a hunting trip, and he defends against the murder charge by claiming that the shooting was accidental. Evidence that he shot his other wives under similar circumstances might be probative of his intent to kill. The inference is that because it is so unlikely that the defendant accidentally shot four

women under similar circumstances, it is highly likely that he acted with the intent to kill.

{¶ 54} It is this second usage of "mistake" evidence that is at issue here. There is no dispute that the oral-sex incident occurred; the question is whether it was consensual. In this context, the purpose for which the other-acts evidence was offered can be similarly described both in terms of mistake and intent. The state offered the evidence for purposes of rebutting Hartman's suggestion that even if E.W. did not consent to oral sex, he mistakenly thought that she had. Or the state offered the evidence for purposes of rebutting Hartman's assertion that he did not intend to commit rape because he believed the sex was consensual.

{¶ 55} Intent is an element of most crimes, but it typically is not a material issue for other-acts purposes unless it is genuinely disputed—in most cases, "the act speaks for itself." Leonard at Section 7.5.3. Thus, intent evidence is not admissible when "the requisite intent is presumed or inferred from proof of the criminal act itself," or when intent is not in issue at all, such as when the defense theory is that the act never occurred. 1 *Wharton's Criminal Evidence*, Section 4:31 (15th Ed.2019). When a defendant is charged with a specific-intent crime, however, the specific intent becomes a material issue in the case. *Gomez*, 763 F.3d at 859. Consider a theft offense, which requires proof that the defendant take property with the purpose of depriving the owner of it; evidence that the defendant immediately pawned the property might be probative of his specific intent to permanently deprive. *See* 1 Imwinkelried et al., *Courtroom Criminal Evidence*, at Section 907(g). Regardless, to be admissible, the other-acts evidence must be relevant to the specific intent and relevant in a permissible way. *Gomez* at 859.

{¶ 56} *State v. Brogan*, 272 Mont. 156, 900 P.2d 284 (1995), provides a useful illustration of a permissible use of such evidence. In that case, the defendant owned a game farm and was charged with unlawfully possessing wild elk. He defended against the charges by asserting that he had left a pasture gate open,

inadvertently allowing the elk to wander onto his property. *Id.* at 159. The state presented other-acts evidence showing that the defendant had on prior occasions failed to maintain his fence and subsequently captured the elk that rambled onto his property as a result. The Supreme Court of Montana held that this evidence was admissible to show a lack of mistake or accident with respect to the charged incident. *Id*. at 165-167. The other-acts evidence was admissible not to show that the defendant had a propensity to capture elk but to negate his explanation for how the elk came to be on his farm. The permissible inference in this situation is that " 'the oftener a like act has been done, the less probable it is that it could have been done innocently.' " (Emphasis deleted.) *State v. Evers*, 139 Wis.2d 424, 437, 407 N.W.2d 256 (1987), quoting 2 Weinstein & Berger, *Weinstein's Evidence*, Section 404[12], at 404-84 to 404-87 (1985).

{¶ 57} There is a thin line between the permissible use of other-acts evidence to show intent and the impermissible use to show propensity. Allowing other-acts evidence to prove the defendant's state of mind "flirt[s] dangerously with eviscerating the character evidence prohibition" altogether. Leonard at Section 7.4. Evidence that a husband shot three previous wives in "hunting accidents" does allow a jury to (permissibly) reason that it is unlikely that the fourth shooting was committed accidentally, but it also enables a jury to (impermissibly) reason that he likely killed his fourth wife because he is a killer.

{¶ 58} For this reason, courts should use caution when evaluating whether to admit other-acts evidence for the purpose of showing intent or absence of mistake. To determine whether other-acts evidence is genuinely probative of the intent of the accused to commit the charged crime, rather than merely the accused's propensity to commit similar crimes, the question is whether, "*under the circumstances*, *the detailed facts* of the charged and uncharged offenses strongly suggest that an innocent explanation is implausible." (Emphasis in original.) *Id.* at Section 7.5.2. Or to put it another way, the other-acts evidence "must be so related

to the crime charged in time or circumstances that evidence of the other acts is significantly useful in showing the defendant's intent in connection with the crime charged." 1 *Wharton's Criminal Evidence* at Section 4:31.

{¶ 59} Here, the state's argument is that Hartman's abuse of his stepdaughter in the past establishes that he obtained access to E.W.'s room with the intent of raping her and negates Hartman's consent defense. In essence, the state's theory is that because Hartman had previously abused his stepdaughter, it is unlikely that he had consensual sex with E.W.

{¶ 60} The state correctly notes that because Hartman defended against the charges involving E.W. on the grounds that their encounter had been consensual, he placed his intent at issue. But even though Hartman's intent was a material issue, it does not follow that B.T.'s testimony about Hartman's prior conduct was probative of his intent in this case.

{¶ 61} The state relies on our decision in *State v. Gardner*, 59 Ohio St.2d 14, 391 N.E.2d 337 (1979), in support of its contention that the other-acts evidence used here tended to prove intent. The crimes in that case involved a victim who claimed to have been abducted by two men and forced to perform oral sex upon one of them at gunpoint. *Id*. at 20. The defendant who was charged with rape defended by claiming that the sex was consensual. *Id*. To rebut the evidence of consent, the state presented evidence that the two defendants had engaged in remarkably similar conduct the night before. Two women testified that the previous evening, the defendants had forced them to engage in oral sex at gunpoint. The prior incident occurred at the same apartment where the abduction of the victim had taken place. *Id.* at 19-20. In addition, the victim testified that she was present and witnessed the events of the night before. *Id.* at 20. This court held that the evidence of the prior events was "so closely related in nature, time and place to the offense charged" as to be probative of intent. *Id.* at 21. We explained that for evidence of the prior night's acts to be probative of intent, it " 'must have [had] such a temporal,

modal and situational relationship with the acts constituting the crime charged' " that it " 'disclose[d] purposeful action in the commission of the offense in question.' " *Id*. at 20, quoting *State v. Burson*, 38 Ohio St.2d 157, 159, 311 N.E.2d 526 (1974).

{¶ 62} There is no such relationship between the two incidents in this case. Evidence that Hartman, while in his own residence, had molested his 12-year-old stepdaughter by touching her chest and vagina and placing her hand on his penis does not support an inference that Hartman entered E.W.'s hotel room with the intent to rape her while she was intoxicated. E.W. and B.T. are not in the same class of victims: one is an adult acquaintance, the other was a child relative. The acts Hartman allegedly forced E.W. to perform bear no similarities to the acts involving B.T. other than being sexual in nature. Without more, the fact that all the acts occurred at night in the victims' sleeping quarters does not provide the degree of similarity necessary to infer intent. The child-molestation evidence presented in this case simply was not probative of Hartman's intent with respect to the hotel-rape allegations.

{¶ 63} Moreover, it is not enough to say that the ultimate purpose for which other-acts evidence is offered is a permissible one; rather, we must ensure that any intermediate inferences are also free of impermissible character purposes. *Gomez*, 763 F.3d at 855. Hartman's having entered the bedroom of his 12-year-old stepdaughter to molest her does not directly support an inference that Hartman entered E.W.'s hotel room with the intent to rape her. Rather, there is an intermediate inference—that, as the state puts it, Hartman preys on sleeping or impaired women and girls. That is precisely the propensity inference that Evid.R. 404(B) forbids.

{¶ 64} We therefore conclude that the evidence of Hartman's other acts constituted improper propensity evidence, and the trial court erred in admitting it. And because we have determined that the other-acts evidence was inadmissible, we

need not reach the question whether the trial court abused its discretion in otherwise permitting the evidence pursuant to Evid.R. 403.

## IV. The Court's Instructions to the Jury Did Not Cure the Prejudicial Effect of the Other-Acts Evidence

{¶ 65} The state also argues that any risk of unfair prejudice was mitigated by the cautionary instructions provided by the court. It notes that on three occasions—before and after B.T.'s testimony and in the final instructions—the court reminded the jury of the limited purpose for which the evidence was admitted.

{¶ 66} In determining whether to admit other-acts evidence, a court should consider the extent to which a limiting instruction to the jury might reduce the risk of unfair prejudice. Such an instruction does not automatically cure all prejudice concerns. Rather, the trial court must decide whether the prejudicial effect of the other-acts testimony is such that it can be sufficiently mitigated by a well-tailored limiting instruction or, to the contrary, whether the effect of the testimony is so prejudicial that no instruction can temper its sway. If the latter is the case, the evidence must be excluded. Evid.R. 403(A).

{¶ 67} The court must give a limiting instruction upon request. Evid.R. 105. But that does not mean the court should sua sponte issue such an instruction any time other-acts evidence is used. Depending on the nature of the other-acts evidence and the context in which it is used, defense counsel may as a matter of strategy wish to avoid highlighting the evidence for the jury. *State v. Schaim*, 65 Ohio St.3d 51, 61, 600 N.E.2d 661 (1992), fn. 9 ("the decision not to request a limiting instruction is sometimes a tactical one, and we do not wish to impose a duty on the trial courts to read this instruction when it is not requested").

{¶ 68} Here, after choosing to admit the other-acts evidence, the court instructed the jury that the evidence could be used only for "deciding whether it proves these limited things: A, the absence of mistake or accident; or B, the defendant's motive, opportunity, intent; or C, purpose, preparation or plan to

commit the offense charged in this trial, or knowledge of circumstances surrounding the offense charged in this trial; or D, the identity of the person who committed the offense in this trial." The court later gave this instruction two more times.

{¶ 69} Unfortunately, an instruction of this type is of only limited value to the jury. As this case illustrates, the analytical distinctions between the different types of evidence that may be admitted under Evid.R. 404(B) can be difficult. Courts struggle with these concepts; it is not realistic to simply list all the permissible uses and expect jurors to go through each one and determine the use for which the evidence is properly considered. To tell a jury that a certain piece of evidence may be considered as evidence of "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident," Evid.R. 404(B), imparts nothing meaningful and is akin to telling the jurors that the evidence may be considered for any purpose.

{¶ 70} Thus, when a court issues a limiting instruction with respect to other-acts evidence, the instruction should be tailored to the facts of the case. The boilerplate language contained in the *Ohio Jury Instructions* addressing other-acts evidence is merely a template. *Ohio Jury Instructions*, CR Section 401.25 (2008). Going forward, courts should explain, in plain language, the purposes for which the other acts may and may not be considered. Rather than recounting to the jury every purpose listed in Evid.R. 404(B), our pattern jury instructions direct trial courts to state the specific purpose for which the other-acts evidence is being admitted in that case. *See Ohio Jury Instructions*, CR Section 401.25. It is important that judges do so.

{¶ 71} In addition, jury instructions should be tailored to better enable jurors to understand the prohibition on the use of other-acts evidence to make inferences about the defendant's disposition to commit criminal acts. "Lay people are capable of understanding the foundational principle in our system of justice that

'we try cases, rather than persons.' " *Gomez*, 763 F.3d at 861, quoting *People v. Allen*, 429 Mich. 558, 566, 420 N.W.2d 499 (1988). Rather than simply telling jurors that they may not consider certain evidence "to prove the character of the defendant in order to show that he acted in conformity with that character," *Ohio Jury Instructions*, CR Section 401.25, the court may explain that the reason for this rule is that "it does not follow from the defendant's past acts that he committed the particular crime charged in this case," *Gomez* at 861. And jurors would be well served by guidance connecting the limiting instruction to the state's burden of proof: the government has the burden of proving each element of *this particular crime* beyond a reasonable doubt, and its burden is not satisfied by an inference that the defendant committed this crime because his past acts suggest a propensity to commit crimes. *See id.*

{¶ 72} In this case, the defense did not object to the court's instruction. And we decline to find plain error. But we do conclude that the generic nature of the instruction that was given severely reduced its import in mitigating the prejudicial effect of the other-acts evidence.

## V. Conclusion

{¶ 73} We conclude that the other-acts evidence introduced in this case was not admissible for any proper purpose under Evid.R. 404(B). Each of the purported rationales relied upon by the trial court either invited an improper character inference or was irrelevant to a material issue in the case. Further, the jury instructions provided did not mitigate the prejudicial effect of the evidence. We therefore affirm the judgment of the Eighth District Court of Appeals.

Judgment affirmed.

O'CONNOR, C.J., and KENNEDY, FRENCH, FISCHER, DONNELLY, and SADLER, JJ., concur.

LISA L. SADLER, J., of the Tenth District Court of Appeals, sitting for STEWART, J.

_____

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Mary M. Frey, Daniel T. Van, and Maxwell Martin, Assistant Prosecuting Attorneys, for appellant.

Patituce & Associates, L.L.C, Joseph C. Patituce, and Megan M. Patituce, for appellee.

Russell S. Bensing, urging affirmance for amicus curiae, Ohio Association of Criminal Defense Lawyers.

_____