[Cite as *State v. Young*, 2023-Ohio-1257.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-220336 |
| | | TRIAL NO. B-1906400 |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| | | *O P I N I O N.* |
| COREY YOUNG, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: April 19, 2023

*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *Keith Sauter*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*The Law Office of Wendy R. Calaway, Co., LPA,* and *Wendy R. Calaway*, for Defendant-Appellant.

**WINKLER, Judge.**

{¶1} Defendant-appellant Corey Young appeals his felony domestic-violence conviction. For the reasons set forth below, we affirm the judgment of the trial court.

## Background

{¶2} This appeal stems from an argument between Young and his then-wife, Dalena Johnson. Johnson alleged that Young threw her into a wall and injured her with a ten-pound dumbbell. The state charged Young with domestic violence in violation of R.C. 2919.25(A), a third-degree felony. The matter proceeded to a bench trial.

{¶3} According to Johnson's trial testimony, Young arrived home late on November 11, 2019. Johnson suspected that Young had been out with another woman, so after Young fell asleep, Johnson started to look through the messages on Young's Apple watch. Young awoke during Johnson's efforts and became very angry. An argument ensued between the two and Young threw Johnson into the wall with such force that it created a hole. According to Johnson, she grabbed a ten-pound dumbbell off the floor to fend off any further attacks, but Young grabbed the dumbbell and started punching her in the face with her own fist. Johnson freed herself, and Young threw the dumbbell at Johnson, hitting her on the upper left thigh. Young took Johnson's cell phone and fled from the house. Johnson woke up her stepson and called the police with his cell phone.

{¶4} Two police officers responded to Johnson's home after her 911 call. The first officer testified that Johnson appeared very distraught and shocked. The officer witnessed injuries to Johnson's thigh, her arm, and her face. He also testified that he saw damage to the wall. The second officer testified that Johnson appeared upset and

scared upon arrival, but he did not see the injury to her thigh, because it would have required her to expose herself. Police were unable to contact Young on the night of the offense.

{¶5} Young testified in his own defense at trial. According to Young, Johnson knew Young had a mistress, and he had told Johnson that he wanted a divorce eight months prior to this incident, but he did not have the money to file for divorce. On the evening in question, Young arrived home late and fell asleep, only to be awakened by his wife standing over him with a dumbbell, cursing at him to leave. Young maintained that he tried to calm Johnson, but she repeatedly struck him in the face with the dumbbell. Young was able to get up, and then Johnson pushed Young into the wall. Young called for his son to come downstairs and restrain Johnson. After Young's son arrived, Young gathered his clothes and left the home.

{¶6} Young's son, C.Y., testified that on the night in question, his dad called for him from the room where Young slept. C.Y. got up and went to Young's room where he saw Young and Johnson standing apart and arguing. Young left. C.Y., as well as a coworker, testified that they observed bruising to Young's face in the days following the incident. Young's mistress also testified that Young had an injury to his face in the days following the incident. Young's mistress testified that months prior, Johnson had shown up at her apartment unannounced, resulting in a call to police, and that she had received threatening and derogatory messages from an unnamed person, telling her to stay away from Young.

{¶7} At the close of trial, the trial court found Young guilty, and sentenced him to 30 months in prison. Young appeals.

3

### *Sufficiency and Manifest Weight of the Evidence*

{¶8}    In his first assignment of error, Young argues that his conviction is not supported by sufficient evidence, and is against the manifest weight of the evidence.

{¶9}    Young was convicted of violating R.C. 2919.25(A), which provides that "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." Young stipulated that he had two prior convictions for domestic violence, which elevated the charge to a third-degree felony. *See* R.C. 2919.25(D)(4).

{¶10} When considering a challenge to the sufficiency of the evidence, an appellate court determines whether, after viewing the evidence in a light most favorable to the prosecution, a rationale trier of fact could have found that the state proved all the elements of the offense beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.  When considering a challenge to the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

{¶11} According to Young, Johnson's testimony was not credible, because it contradicted some of the testimony from C.Y.  C.Y. testified that he came into the bedroom when he heard his dad calling for him. Johnson's testimony did not mention that C.Y. ran into the room, and Johnson claimed that she woke C.Y. to use his cell phone. Young also points out that Johnson physically confronted Young's mistress, resulting in a protection order, so she had a reason to fabricate the allegations.

4

{¶12} Although Johnson and C.Y. testified to different versions of what happened after the physical altercation, C.Y. never saw any physical fighting between Young and Johnson. Even by Young's own testimony, a physical altercation occurred. Moreover, despite any alleged inconsistencies in Johnson's testimony and her potential reason to fabricate allegations against Young to seek revenge, Johnson testified that Young injured her thigh with a dumbbell, resulting in a large bruise. Johnson supplied the state with a photograph of the hole in the wall and with a photograph of a large bruise on her thigh. The officers testified regarding Johnson's scared demeanor upon arrival the night of the incident, and they witnessed a hole in the wall. One of the officers testified that he saw Johnson's injuries. The trier of fact, in this case the trial court, was in the best position to determine credibility. *See State v. Landrum*, 1st Dist. Hamilton No. C-150718, 2016-Ohio-5666. Viewing the evidence in the light most favorable to the state, the trial court could have reasonably found that Young committed domestic violence, and the trial court did not lose its way and create a manifest miscarriage of justice in finding Young guilty. *See Jenks* at 273; *Thompkins* at 387.

{¶13} We overrule Young's first assignment of error.

### Evidentiary Issues

{¶14} In Young's second assignment of error, he argues that the trial court "fail[ed] to correctly apply the rules of evidence and fail[ed] to apply the rules of evidence in an equitable manner between the parties[]" resulting in an unfair trial.

{¶15} According to Young, the trial court erred in admitting inadmissible character evidence when Johnson testified that she had intended to take pictures of the messages on Young's Apple watch because she had "learned from being with him

all these years" that if she confronted him with the allegations of infidelity, he was "really good at lying" and "manipulating and gas-lighting and not telling the truth." Defense counsel objected to Johnson's testimony, and the trial court overruled the objection, stating that the testimony would be admissible under Evid.R. 608(B), as a specific incident of conduct. The prosecutor then asked Johnson whether she had been in a prior situation where she needed to document his phone. Johnson responded that, in 2019, Young had been unfaithful with nine women, and that she took "screenshots" of the messages and pictures she found, including a message where Young had asked to have sex with another woman.

{¶16} The state agrees that the trial court erred in determining that Evid.R. 608(B) applies to Johnson's statements regarding Young's alleged prior infidelities. Nevertheless, the state argues that the trial court did not err in admitting the evidence under Evid.R. 404(B), because it was not offered for the prohibited propensity inference, but the evidence was offered solely to explain why Johnson looked through the messages on Young's Apple watch. *See State v. Hartman*, 161 Ohio St.3d 214, 2020-Ohio-4440, 161 N.E.3d 651.

{¶17} Even if we were to assume that the trial court erred in admitting evidence of Young's prior infidelities, any error in the admission was harmless beyond a reasonable doubt. *See* Crim.R. 52(A); *State v. Morris*, 141 Ohio St.3d 399, 2014-Ohio-5052, 24 N.E.3d 1153. The trial court, as the factfinder, stated that it would "just take [the evidence] for what it's worth. It is simply an explanation as to why she was doing what she was doing [looking through Young's Apple watch messages]." Furthermore, Young admitted in his testimony that he had been unfaithful to Johnson

at least with respect to his mistress. Ultimately, the evidence of Young's prior infidelities had no bearing on whether Young committed domestic violence.

{¶18} Young also argues that the trial court erred in sustaining an objection by the state and excluding evidence offered by Young that Young had tried to leave Johnson on more than one occasion prior to this incident, but that Johnson became "reckless" and threw his clothes in the yard or threw lighted matches at him. According to Young, this evidence is admissible under Evid.R. 404(A)(2): "[e]vidence of a pertinent trait of character of the victim of the crime offered by an accused * * * to rebut evidence that the victim was the first aggressor is admissible[.]"

{¶19} The trial court did not err in sustaining the objection to Young's proffered testimony regarding Johnson's alleged past violent acts. Even if Young's testimony could be characterized as character evidence under Evid.R. 404(A)(2), Evid.R. 405 provides that character evidence may be offered "by testimony as to reputation or by testimony in the form of an opinion." Evid.R. 405(A). Proof of character may be offered in the form of "specific instances of conduct" when "character or a trait of character of a person is an essential element of a charge, claim, or defense." Evid.R. 405(B). Johnson's alleged "character" for violence was not an essential element in this case. Young did not claim self-defense, and he denied physically injuring Johnson in any manner. Therefore, Young could not admit evidence of specific incidents of Johnson's alleged violent conduct.

{¶20} Young also argues that the trial court erred in refusing to admit as a defense exhibit a screenshot of a text message Johnson allegedly sent to Young, in which Johnson explains that she fabricated the allegations of domestic violence and wanted to reconcile. The state objected to the text message on the grounds that

7

Johnson had denied sending a text message to Young after the incident, and that Young's testimony was not sufficient to authenticate the message. On appeal, Young argues that his testimony that he received the text message is sufficient to authenticate the exhibit under Evid.R. 901. *See State v. Huge*, 1st Dist. Hamilton No. C-120388, 2013-Ohio-2160, ¶ 29.

{¶21} We agree with Young that, under Evid.R. 901, his testimony that he received a text message on his phone from Johnson's phone number is sufficient to authenticate the text message; however, we determine that any error by the trial court in refusing to admit the exhibit was harmless beyond a reasonable doubt. *See* Crim.R. 52(A). Even if the text message had been admitted, it would not have been enough to prove that Johnson sent the message. Johnson testified that her cell phone went missing contemporaneously with the argument that she had with Young. Johnson testified that she used her stepson's phone to call 911, and that she had to get a new cell phone. Johnson denied sending any text message to Young after the incident. The inference that can be made on these facts is that Young took Johnson's cell phone, and it would have been possible for Young to send a text message from Johnson's phone to his cell-phone number. Moreover, Young admitted to getting into a physical altercation with Johnson the night of the incident—he claims that Johnson threw him into the wall, even though Young admitted that he is physically larger than Johnson. Young also claims that Johnson hit him in the face with a dumbbell. Nevertheless, Young fled from the residence and did not call the police. Johnson claims that Young threw her into a wall and hit her on the thigh with a dumbbell. Johnson called police the night of the incident. The police, the only disinterested witnesses, verified the hole in the wall, and one of the officers verified Johnson's injuries. Both officers testified

8

that Johnson appeared scared the night of the incident. Therefore, even if the text message had been admitted as an exhibit, the result would not have been different.

**{¶22}** We overrule Young's second assignment of error regarding the trial court's evidentiary rulings.

### *Conclusion*

**{¶23}** Having overruled Young's assignments of error, we affirm the judgment of the trial court.

Judgment affirmed.

**CROUSE, P.J.,** and **BOCK, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.