**[Cite as *State v. Sotelo*, 2020-Ohio-5368.]**

## IN THE COURT OF APPEALS OF OHIO
### SIXTH APPELLATE DISTRICT
### LUCAS COUNTY

| | |
|---|---|
| State of Ohio | Court of Appeals No. L-19-1240 |
| Appellee | Trial Court No. CR0201901503 |
| v. | |
| Selena Sotelo | **<u>DECISION AND JUDGMENT</u>** |
| Appellant | Decided: November 20, 2020 |

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Evy M. Jarrett, Assistant Prosecuting Attorney, for appellee.

Laurel A. Kendall, for appellant.

* * * * *

**SINGER, J.**

## I. Introduction

**{¶ 1}** Appellant, Selena Sotelo, appeals the judgment of the Lucas County Court of Common Pleas, sentencing her to five years in prison after a jury found her guilty of two counts of pandering sexually oriented matter involving a minor and one count of illegal use of a minor in a nudity-oriented material or performance.

## A. Facts and Procedural Background

{¶ 2} On March 21, 2019, appellant and her boyfriend, Jessie Hieber, were indicted after it was discovered that the couple had electronically transmitted three child pornography videos to one another. For her role in the transmission of child pornography, appellant was charged with three counts of pandering sexually oriented matter involving a minor in violation of R.C. 2907.322(A)(1) and (C), felonies of the second degree, and three counts of illegal use of a minor in a nudity-oriented material or performance in violation of R.C. 2907.323(A)(3) and (B), felonies of the fifth degree. One of the counts of illegal use of a minor in a nudity-oriented material or performance was dismissed by the state prior to trial after the state realized that the minor depicted in the material was wearing clothing.

{¶ 3} Two weeks after her indictment, on April 3, 2019, appellant entered a plea of not guilty to the aforementioned charges, and the matter continued to discovery.

{¶ 4} On August 22, 2019, the state filed its notice of intent to use evidence, in which it indicated its intent to introduce evidence lifted from appellant's Facebook profile, including "(1) Conversations in which Sotelo confronts Hieber, most frequently about photographs on his phone which are NOT child pornography; and (2) A conversation in which Sotelo voluntarily transmits child pornography photographs to Hieber, without confrontation." Because this evidence "form[s] the immediate context surrounding the charged offense" and concerned acts that were intrinsic to the offenses

2.

with which appellant was charged, the state contended that the evidence was admissible notwithstanding Evid.R. 404(B).

{¶ 5} Moreover, the state argued that the conversations in which appellant confronted Hieber with several photographs of adult females were admissible under Evid.R. 404(B) as evidence of motive and intent. Specifically, the state asserted that it would "argue at trial that Sotelo's motive and intent in sending the [adult female] photographs was for confrontation, while her motive and intent in sending the child pornography videos was for the sexual arousal of herself and/or Hieber."

{¶ 6} On October 4, 2019, appellant filed two motions in limine. In one of her motions, appellant sought to preclude the state from introducing the Evid.R. 404(B) evidence obtained from Facebook, subsequently identified as certain images contained in state's exhibits Nos. 1 and 2 as well as the images depicting adult females in sexually suggestive poses, which were contained in state's exhibits Nos. 6, 7, 8, and 9. In her motion, appellant argued that the images were unrelated to the child pornography charges and thus were irrelevant in this case. Further, appellant contended that the evidence was highly prejudicial because it would invite the jury to judge her on "unrelated, extrinsic and potentially very prejudicial matter[s]."

{¶ 7} Three days later, on October 7, 2019, the matter proceeded to a jury trial. At the outset of the trial, prior to jury selection, the trial court addressed appellant's motion in limine. Appellant's defense counsel clarified that appellant did not object to the introduction of state's exhibits Nos. 1 and 2 in their entirety, only to the admission of

3.

certain images contained therein.  Further, the state indicated that it did not intend to introduce the images contained in state's exhibits Nos. 6, 7, 8, and 9 in its case-in-chief, but wanted to reserve those for cross-examination or rebuttal in the event that appellant opened the door for the admission of those images.  Defense counsel stipulated to the state's usage of state's exhibits Nos. 6, 7, 8, and 9 for rebuttal or cross-examination.  Thereafter, the trial court denied appellant's motion in limine regarding the images contained in state's exhibits Nos. 1 and 2, and instructed appellant's defense counsel to prepare a limiting instruction that it could use at trial in the event those images were introduced by the state.

{¶ 8} The matter then proceeded to the state's case-in-chief, during which the state called two witnesses.  As its first witness, the state called Jason Smith.  Smith is a special agent assigned to the child exploitation group of the United States Department of Homeland Security.  On the morning of January 16, 2018, Smith accompanied another agent, Linopaolo Aguja, to appellant's residence located at 1129 Delence Street, Toledo, Ohio.  The agents were dispatched to that address to conduct a consensual "knock and talk" interview of Hieber in furtherance of a child exploitation investigation to which they were assigned.

{¶ 9} During the ensuing interview, Hieber permitted the agents to examine the contents of his mobile phone.  During his review, Smith noticed several video files.  Using the mobile phone application Facebook Messenger, Smith played the videos and determined that one of them depicted "a prepubescent female child performing oral sex

4.

on adult male penis." Smith recognized the video as one he had seen in previous cases involving child exploitation. Thereafter, Smith detained Hieber's mobile phone for further forensic examination.

{¶ 10} Later the same day, Smith and Aguja returned to the residence for further interviews. The agents proceeded to interview appellant and Hieber, and appellant confirmed that she and Hieber were in a romantic relationship with one another.

{¶ 11} As its next witness, the state called agent Aguja. Aguja reiterated that Hieber provided his consent for the agents to examine his mobile phone. Hieber directed the agents to a Facebook Messenger chat between himself and an individual named Babe. Upon review, Aguja noticed child pornography contained in the chat. Consequently, Aguja asked Hieber to come to the Toledo Police Department for an interview. Hieber declined, and the agents returned to their vehicle.

{¶ 12} Consistent with Smith's testimony, Aguja testified that he and Smith returned to the residence later that same day. Upon their return, the agents interviewed appellant and Hieber after informing them of their *Miranda* rights. While speaking to appellant, Aguja raised the topic of child pornography. According to Aguja, appellant "indicated she saw a thumbnail of a video of a little girl. She indicated she didn't see the – she didn't actually watch the video and she received it randomly on Facebook." While speaking with Aguja, appellant indicated that she and Hieber previously utilized separate phones, but began sharing one phone after Hieber's phone broke.

5.

{¶ 13} Using the information gleaned from his interviews of appellant and Hieber, Aguja obtained a search warrant permitting the search of appellant's and Hieber's Facebook accounts. Aguja forwarded the search warrant to Facebook, which responded by providing appellant with a downloadable file containing the contents of the accounts, including identifying information that enabled Aguja to connect the accounts to appellant and Hieber. The information provided by Facebook pertaining to the accounts associated with appellant and Hieber was admitted and published at trial as state's exhibit No. 1 and state's exhibit No. 2, respectively.

{¶ 14} When he reviewed the information provided by Facebook, Aguja noticed communications containing child pornography that were sent by appellant to Hieber between February 6, 2017, and March 24, 2017, the dates associated with the charges in appellant's indictment. One of those messages was a child pornography video that appellant sent to Hieber on March 22, 2017. The video was admitted as state's exhibit No. 3 and published to the jury at trial. Two additional messages containing child pornography videos, both of which were sent by appellant to Hieber on February 19, 2017, were admitted as state's exhibits Nos. 4 and 5 and published to the jury. After authenticating the foregoing videos, Aguja testified the videos contained child pornography, which he was able to ascertain based upon his prior law enforcement experience. When he asked appellant about the origins of the child pornography videos, she stated that she received them randomly on Facebook.

6.

{¶ 15} Aguja also noticed that the videos only appeared on Hieber's Facebook account despite having been sent by appellant. Aguja explained that this indicated that appellant must have deleted the videos from her Facebook account after sending them to Hieber but before the data could be preserved by Facebook pursuant to a preservation letter under which Facebook would "take a snapshot of [appellant's] Facebook account." Aguja testified that he sent the preservation letter to Facebook sometime within two days of interviewing appellant at her residence.

{¶ 16} At the conclusion of Aguja's testimony, the state rested. Appellant moved for an acquittal under Crim.R. 29, and the trial court denied appellant's motion. Thereafter, the matter proceeded to appellant's case-in-chief.

{¶ 17} Appellant was the only witness to take the stand during her case-in-chief. When asked how the videos depicted in state's exhibits Nos. 3, 4, and 5 were placed onto her phone, appellant stated that Hieber, who was sharing the phone with appellant at the time, downloaded them from another mobile application named Kik. Appellant testified that the videos "were being saved to the phone, but I didn't know what was being saved to the phone, what videos they were."

{¶ 18} Appellant went on to acknowledge that she found the videos on the phone and sent the videos to Hieber, but insisted that she was unaware of their content because she did not watch the videos. Appellant stated that she sent the videos to Hieber, whom appellant described as having a "high sex drive," because she thought that "they were videos of adult females that he had in his phone." Appellant went on to state that she had

7.

concerns regarding Hieber not being "loyal to the relationship and talking to other females."

{¶ 19} Prior to its cross-examination of appellant, the state notified the trial court of its intention to introduce the material contained in state's exhibits Nos. 8 and 9 based upon appellant's testimony that she only intended to send Hieber adult pictures and videos, and her insistence that she had no knowledge of the child pornography contained in the videos she forwarded to Hieber. Appellant's defense counsel did not object to the state's introduction of state's exhibits Nos. 8 and 9, and the trial court permitted the state to introduce said exhibits.

{¶ 20} During cross-examination, appellant acknowledged that she sent the material contained in state's exhibits Nos. 8 and 9 to Hieber via Facebook Messenger, including the images of underage females, one of whom she described in her messages to Hieber as a "preteen." At trial, appellant conceded that the females depicted in the images she sent to Hieber appeared to be under the age of 18.

{¶ 21} At the conclusion of appellant's testimony, the defense rested. Appellant's defense counsel renewed the Crim.R. 29 motion for acquittal, which was again denied by the trial court. Thereafter, the parties discussed the admission of state's exhibits Nos. 1, 2, and 8 with the trial court. These exhibits depict excerpts from Facebook Messenger of appellant's conversations with Hieber. State's exhibits Nos. 1 and 2 pertain to conversations that took place in February 2017 and March 2017. Several images are contained in these exhibits, some of which include nudity, but none of which are

8.

obviously child pornography. However, nude images of clearly underage females are contained in the August 2017 Facebook Messenger conversations excerpted in state's exhibit No. 8. Appellant indicated as much in her messages to Hieber, which read, in relevant part: "[And] I sent u the one wit the black bitch since u like them cuz u screenshot a pic wit the same black bitch * * * an[d] the preteen one too."

{¶ 22} Appellant objected to the admission of these exhibits based upon the observation that they did not contain child pornography or form the basis for the charges in this case and were therefore irrelevant and overly prejudicial.

{¶ 23} In response, the state contended that these exhibits were admissible to establish that appellant routinely sent Hieber erotic material in order to arouse him. According to the state, such evidence was admissible for the purpose of rebutting appellant's claim at trial that she sent the videos in state's exhibits Nos. 3, 4, and 5 without opening the files in order to confront Hieber for suspected infidelity, and was therefore unaware that the videos contained child pornography. Later in the parties' discussions with the court on this matter, the state specifically identified motive, intent, or absence of mistake or accident as the bases under which it claimed the evidence was admissible under Evid.R. 404(B), and argued that appellant opened the door to this material when she claimed that she was unaware of the child pornography in state's exhibits Nos. 3, 4, and 5.

{¶ 24} Upon consideration of the parties' arguments, the court admitted the exhibits and allowed them to be published to the jury during deliberations. The court

9.

reviewed the contents of the Facebook Messenger conversations contained in the exhibits, and found that appellant's testimony opened the door for the state to introduce such evidence to support its argument that appellant sent the erotic material to Hieber for purposes of mutual arousal, not in order to confront him.

{¶ 25} Following jury instructions and closing arguments, the jury returned a verdict of guilty on two of the three counts of pandering sexually oriented matter involving a minor and one of the two counts of illegal use of a minor in a nudity-oriented material or performance. The jury found appellant not guilty of the pandering charge based upon the video in state's exhibit No. 3.

{¶ 26} After the jury returned its verdict, the court informed appellant of her registration duties as a sex offender, and the matter proceeded immediately to sentencing. At sentencing, the trial court merged Count 1 (pandering sexually oriented matter involving a minor) and Count 4 (illegal use of a minor in a nudity-oriented material or performance) and the state elected to proceed on Count 1. Ultimately, the trial court ordered appellant to serve five years in prison on Counts 1 and 3, to be served concurrently. Thereafter, appellant filed her timely notice of appeal with this court.

## B. Assignments of Error

{¶ 27} On appeal, appellant assigns the following errors for our review:

I. The trial court abused its discretion when it admitted evidence of other acts to prove conformity therewith, in violation of Evid.R. 404(B).

II. Appellant's convictions for pandering sexually oriented matter involving a minor were based on insufficient evidence.

III. Appellant's convictions for pandering sexually oriented matter involving a minor were against the manifest weight of the evidence.

## II. Analysis

### A. Admissibility of State's Exhibit No. 8 under Evid.R. 404(B)

{¶ 28} In her first assignment of error, appellant argues that the trial court abused its discretion when it admitted state's exhibit No. 8 into evidence in violation of Evid.R. 404(B).[1]

{¶ 29} Evid.R. 404(B) provides in pertinent part:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

{¶ 30} In general, evidence of other acts, "wholly independent of the criminal offense for which a defendant is on trial," are inadmissible. *State v. Thompson*, 66 Ohio St.2d 496, 497, 422 N.E.2d 855 (1981). "Evid.R. 404(B) categorically prohibits evidence of a defendant's other acts when its only value is to show that the defendant has the

---

[1] Appellant also challenged the admission of state's exhibits Nos. 1 and 2 under Evid.R. 404(B) at trial, but does not reassert that argument here.

character or propensity to commit a crime." *State v. Smith*, --- Ohio St.3d ----, 2020-Ohio-4441, --- N.E.3d ----, ¶ 36. "The key is that the evidence must prove something other than the defendant's disposition to commit certain acts." *State v. Hartman*, --- Ohio St.3d ----, 2020-Ohio-4440, --- N.E.3d ----, ¶ 22.

{¶ 31} In *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, the Supreme Court of Ohio set forth a three-step analytical framework that governs the admission of other acts evidence under Evid.R. 404(B). *State v. Ridley*, 6th Dist. Lucas No. L-10-1314, 2013-Ohio-1268, ¶ 33. The analysis provides:

> The first step is to consider whether the other acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Evid.R. 401. The next step is to consider whether evidence of the other crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other acts evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B). The third step is to consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice. *See* Evid.R 403.

*Williams* at ¶ 20.

{¶ 32} Recently, the Supreme Court of Ohio issued its decisions in *Hartman* and *Smith*, in which the court revisited the test it articulated in *Williams*. In *Hartman*, the

12.

court explained that the threshold question in other acts cases is whether the evidence is relevant. *Hartman* at ¶ 24; Evid.R. 401. The court in *Hartman* noted that relevance is rarely a problem with other-acts evidence but that, indeed, such evidence is often too relevant. *Id.* at ¶ 25. The court noted that the relevance examination in the Evid.R. 404(B) setting asks two questions: (1) is the proffered evidence relevant to the particular purpose for which it is offered, and (2) is the evidence relevant to an issue that is actually in dispute. *Id.* at ¶ 26-27. "Thus, courts should begin by evaluating whether the evidence is relevant to a non-character-based issue that is material to the case." *Smith* at ¶ 38.

{¶ 33} After ensuring that the other-acts evidence is not being offered to invite the factfinder to draw improper character inferences and is probative of an issue in the case, the next step in the Evid.R. 404(B) analysis is the consideration of the evidence under Evid.R. 403(A). *Hartman* at ¶ 29. Under this prong of the analysis, we consider whether the probative value of the other-acts evidence is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.

{¶ 34} "[T]he admission of evidence lies within the broad discretion of the trial court, and a reviewing court should not disturb evidentiary decisions in the absence of an abuse of discretion that has created material prejudice." *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 62, citing *State v. Issa*, 93 Ohio St.3d 49, 64, 752 N.E.2d 904 (2001). An abuse of discretion is demonstrated where the trial court's attitude in reaching its decision was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

13.

{¶ 35} Here, appellant acknowledges that her knowledge of the existence of child pornography in state's exhibits Nos. 4 and 5 was a material issue in this case. At trial, appellant did not dispute the illicit nature of the contents of those exhibits, but instead claimed that she was unaware of their contents when she sent them to Hieber. Appellant testified that she forwarded the videos containing child pornography in state's exhibits Nos. 4 and 5 without reviewing them in an effort to confront Hieber for suspected infidelity.

{¶ 36} After appellant provided the foregoing testimony, the state introduced the Facebook Messenger conversation excerpted in state's exhibit No. 8, in which she stated in part, "I sent u the one wit the black bitch since u like them cuz u screenshot a pic wit the same black bitch * * * an[d] the preteen one too." Based upon appellant's obvious knowledge of the existence of child pornography in at least one of the images she sent in the message thread outlined in state's exhibit No. 8, the state contended that appellant's claim of ignorance lacked credibility. Moreover, the state argued that appellant's repeated forwarding of pornography to Hieber established a pattern or habit of appellant using pornography to sexually arouse Hieber rather than confront him.

{¶ 37} Appellant argues that state's exhibit No. 8 should not have been admitted because the messages and images contained therein were sent in August 2017, months after her transmission of the videos in state's exhibits Nos. 4 and 5, which formed the basis for the charges in the indictment. Appellant contends that "while the text message arguably imputed some knowledge to appellant concerning an image that she forwarded

14.

to co-defendant Hieber in August 2017, it had arguably nothing to do with the videos sent earlier in the year."

{¶ 38} In response, the state asserts that state's exhibit No. 8 was offered by the state at trial to rebut appellant's claim that she did not know that the videos in state's exhibits Nos. 4 and 5 contained child pornography. According to the state, "the contents of Exhibit 8 undermined Sotelo's argument that she never knew that Hieber was interested in child pornography and that she was aware he had previously downloaded 'preteen' materials." As such, the state argues that state's exhibit No. 8 was admissible under Evid.R. 404(B) in order to demonstrate the absence of mistake or accident.

{¶ 39} In *Hartman*, *supra*, the Supreme Court of Ohio explained that "[o]ther-acts evidence is admissible to negate a defendant's claim of mistake or accident with respect to the commission of the alleged crime; such evidence tends '[t]o show, by similar acts or incidents, that the act in question was not performed inadvertently, accidentally, involuntarily, or without guilty knowledge.'" *Hartman*, --- Ohio St.3d ----, 2020-Ohio-4440, --- N.E.3d ----, at ¶ 52, quoting McCormick, *Evidence*, Section 190, at 804 (4th Ed.1994). The court went on to describe two ways in which a defendant may raise a claim of accident.

{¶ 40} The first, which is not at issue here, involves whether a criminal act occurred at all. *Id.* As noted above, appellant does not dispute the existence of child pornography in the videos identified as state's exhibits Nos. 4 and 5, and it is clear from the testimony of the state's witnesses that appellant sent those videos to Hieber.

15.

**{¶ 41}** The second manner in which a defendant may raise a claim of accident "implicates the intent of the accused. The question here is not whether the act occurred but whether the defendant acted with a criminal intent." *Id.* at ¶ 53. The court in *Hartman* further elucidated the standard for admitting other acts evidence in this scenario, as follows:

> To determine whether other-acts evidence is genuinely probative of the intent of the accused to commit the charged crime, rather than merely the accused's propensity to commit similar crimes, the question is whether, "*under the circumstances, the detailed facts* of the charged and uncharged offenses strongly suggest that an innocent explanation is implausible." (Emphasis in original.) Leonard, *The New Wigmore: Evidence of Other Misconduct and Similar Events*, Section 7.5.2 (2d Ed. 2019). Or to put it another way, the other-acts evidence "must be so related to the crime charged in time or circumstances that evidence of the other acts is significantly useful in showing the defendant's intent in connection with the crime charged." 1 *Wharton's Criminal Evidence*, Section 4:31 (15th Ed.2019).

*Id*. at ¶ 58.

**{¶ 42}** The state introduced state's exhibit No. 8 in this case in order to establish that appellant acted with criminal intent by *knowingly* disseminating child pornography to Hieber. The state did not offer this evidence to demonstrate that appellant had a

propensity to disseminate child pornography in general and should be convicted of the charged offenses on this basis. Rather, the state introduced state's exhibit No. 8 to rebut appellant's claim that she did not intend to disseminate child pornography and had no knowledge that such material was contained on the videos she sent to Hieber.

{¶ 43} Taken together with the rest of the evidence produced at trial, the material contained in state's exhibit No. 8, including appellant's identification of the individual depicted in one of the images as a "preteen," tends to show appellant's familiarity with the contents of the pornographic material she sent to Hieber. This familiarity cuts directly against appellant's claim at trial that she was unaware that the videos she sent to Hieber contained child pornography.

{¶ 44} Further, state's exhibit No. 8 supports the state's theory concerning appellant's motive behind sending the videos, which was an issue in this case after appellant testified that she sent the videos to Hieber because she suspected he was being unfaithful to her and wanted to confront him. On the contrary, the state contended that appellant consistently used sexually explicit materials to arouse Hieber, and introduced such materials, including state's exhibit No. 8, to demonstrate that appellant's arousal motivation permeated her interaction with Hieber throughout the duration of the couple's relationship. State's exhibit No. 8 shows that appellant continued to attempt to arouse Hieber with sexually explicit materials months after her transmission of the videos contained in state's exhibits Nos. 4 and 5.

17.

{¶ 45} In short, we find that the evidence contained in state's exhibit No. 8 was relevant to the question of whether appellant disseminated child pornography with criminal intent rather than by mistake or accident. Further, our review of the record confirms that appellant's knowledge of the existence of child pornography in state's exhibits Nos. 4 and 5 was *the* disputed issue in this case. Indeed, appellant acknowledges in her brief that "the state's case rested on proving that she knew the character of the videos."

{¶ 46} Additionally, we find that the probative value of the evidence contained in state's exhibit No. 8 was not substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury. While the evidence was certainly prejudicial to appellant insofar as it called into question the sincerity of her claim that she did not know that the videos she sent to Hieber depicted child pornography, such evidence was not *unfairly* prejudicial. Further, the evidence was not confusing or misleading to the jury. Therefore, we find that the trial court did not abuse its discretion in admitting state's exhibit No. 8 over appellant's objections.

{¶ 47} Accordingly, appellant's first assignment of error is not well-taken.

### B. Sufficiency and Manifest Weight of the Evidence

{¶ 48} In appellant's second assignment of error, she argues that her convictions for pandering sexually oriented matter involving a minor were based on insufficient evidence. In her third assignment of error, appellant contends that these convictions were

18.

against the manifest weight of the evidence. Because these arguments are interrelated, we will address them simultaneously.[2]

{¶ 49} In reviewing a challenge to the sufficiency of the evidence, we view the evidence in a light most favorable to the prosecution and determine whether "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." (Internal citations omitted.) *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997). In making that determination, the appellate court will not weigh the evidence or assess the credibility of the witnesses. *State v. Were*, 118 Ohio St.3d 448, 2008-Ohio-2762, 890 N.E.2d 263, ¶ 132. Whether there is sufficient evidence to support a conviction is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

{¶ 50} In contrast, when reviewing a manifest weight of the evidence issue, we sit as a "thirteenth juror." *Id.* at 387. That is, we review the entire record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses. *Id.* Our role is to determine "whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Id.* We reverse a conviction on manifest

---

[2] Appellant does not challenge the sufficiency or weight of the evidence regarding her conviction for one count of illegal use of a minor in a nudity-oriented material or performance.

weight grounds for only the most "exceptional case in which the evidence weighs heavily against the conviction." *Id.* at 387.

{¶ 51} Here, appellant was convicted of pandering sexually oriented matter involving a minor in violation of R.C. 2907.322(A)(1), which provides:

> (A) No person, with knowledge of the character of the material or performance involved, shall do any of the following:
>
> (1) Create, record, photograph, film, develop, reproduce, or publish any material that shows a minor or impaired person participating or engaging in sexual activity, masturbation, or bestiality.

{¶ 52} Appellant concedes that she sent the videos contained in state's exhibits Nos. 4 and 5 to Hieber. Moreover, appellant does not dispute that state's exhibits Nos. 4 and 5 contain child pornography, a fact that is beyond dispute from our review of the videos. However, appellant maintains that the evidence presented by the state at trial was insufficient on the mens rea element set forth above. That is, appellant contends that the state failed to prove that she disseminated the child pornography in state's exhibits Nos. 4 and 5 "with knowledge of the character of the material or performance involved." R.C. 2907.322(A)(1). Appellant further argues that her pandering convictions are against the manifest weight of evidence in light of her testimony that she forwarded the videos to Hieber without viewing them.

{¶ 53} Having reviewed the record in its entirety, we find that the state's evidence in this case was sufficient to prove appellant's knowledge of the child pornography

20.

depicted in the videos in state's exhibits Nos. 4 and 5.  Several pieces of evidence support our finding.

{¶ 54} First, appellant acknowledged seeing a thumbnail of a video of a child during her knock and talk interview with Smith and Aguja.  Second, a forensic examination of appellant's Facebook Messenger message thread with Hieber revealed that appellant deleted the child pornography videos she sent to Hieber from her Facebook Messenger account, which would permit the jury to draw the reasonable inference that she knew of the illicit nature of those videos and wished to hide the fact that she sent them.  Third, appellant's subsequent text message acknowledging that she had sent an illicit image of a "preteen" casts doubt upon appellant's claim that she was unaware of the contents of the material she sent to Hieber.

{¶ 55} Taken together, and viewed in a light most favorable to the prosecution, the foregoing evidence supports the state's contention that appellant knew of the existence of child pornography in the videos she sent to Hieber.  Thus, the evidence presented by the state was sufficient to support the pandering charges.

{¶ 56} Furthermore, in light of the foregoing evidence provided by the state, we do not find that the jury lost its way in rejecting appellant's self-serving testimony that she forwarded the videos without first viewing them.  This is not the exceptional case in which the evidence weighs heavily against the conviction, and thus we do not find that appellant's pandering convictions are against the manifest weigh of the evidence.

21.

{¶ 57} Accordingly, appellant's second and third assignments of error are not well-taken.

### III. Conclusion

{¶ 58} Based on the foregoing, the judgment of the Lucas County Court of Common Pleas is affirmed. Costs are hereby assessed to appellant in accordance with App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J.                    _____
                                                              JUDGE
Thomas J. Osowik, J.

                                          _____
Christine E. Mayle, J.                                JUDGE
CONCUR.

                                          _____
                                                              JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.