[Cite as *State v. Cioffi*, 2025-Ohio-423.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## LOGAN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

    v.

CARLOS M. CIOFFI,

    DEFENDANT-APPELLANT.

CASE NO. 8-24-36

O P I N I O N

Appeal from Logan County Common Pleas Court
General Division
Trial Court No. CR-23 06 0137

**Judgment Affirmed in Part, Reversed in Part and Cause Remanded**

**Date of Decision: February 10, 2025**

APPEARANCES:

    *Christopher Bazeley* **for Appellant**

    *Nathan Yohey* **for Appellee**

**MILLER, J.**

{¶1} Defendant-Appellant, Carlos Cioffi ("Cioffi"), appeals from the May 30, 2024 judgment of the Logan County Court of Common Pleas, following a jury trial and sentencing resulting in convictions for four counts of domestic violence and two counts of felonious assault. Cioffi argues the trial court erred in failing to merge some of his convictions and in allowing the State to present evidence of his prior conduct. For the reasons that follow, we agree with Cioffi regarding merger and disagree with him regarding the evidence of his prior conduct. Accordingly, the trial court's judgment is reversed with respect to its failure to merge Counts 2 and 3 and with respect to its failure to merge Counts 4 and 5, and we remand the matter for the limited purpose of resentencing Cioffi in accordance with this opinion. In all other respects, the trial court's judgment is affirmed.

## I. FACTS AND PROCEDURAL HISTORY

{¶2} Mindy Cioffi ("Mindy") was married to Cioffi during all relevant times and is the alleged victim of the offenses. On June 14, 2023, Cioffi was indicted on six charges. Counts 1, 3, 5, and 6 each charged Cioffi with committing domestic violence, first-degree misdemeanors in violation of R.C. 2919.25(A). These four charges stemmed from alleged incidents on January 14, March 2, March 12, and April 22, 2023. Counts 2 and 4 both charged Cioffi with committing felonious

assault, second-degree felonies in violation of R.C. 2903.11(A)(1). These two charges stemmed from alleged incidents on March 2 and March 12, 2023—the same dates as the domestic violence charges in Counts 3 and 5, respectively.

{¶3} The case proceeded to trial on April 24-25, 2024. The witnesses at trial included a police sergeant from the Bellefontaine Police Department, Mindy, and expert witness Deborah Brownlee ("Brownlee"). Most of the numerous exhibits admitted at trial were photos of Mindy's injuries allegedly inflicted by Cioffi. After deliberation, the jury found Cioffi guilty of all six charges.

{¶4} The trial court held a sentencing hearing on May 30, 2024. The trial court sentenced Cioffi to 180 days in jail on each of the four domestic violence counts, four to six years in prison on Count Two for felonious assault, and four years in prison on Count Four for felonious assault. The trial court ordered all six sentences to be served concurrently for an aggregate total of four to six years in prison. This appeal followed.

## II. ASSIGNMENTS OF ERROR

{¶5} Cioffi raises two assignments of error for our review:

**First Assignment of Error**

**The trial court erred when it failed to merge Cioffi's convictions on Counts Two and Three, and, separately, his convictions on Counts Four and Five.**

**Second Assignment of Error**

**The trial court erred when it allowed the State to present evidence of Cioffi's prior conduct to the jury.**

## III. DISCUSSION

### A. First Assignment of Error

{¶6} In the first assignment of error, Cioffi argues that the domestic violence and felonious assault offenses that occurred on March 2, 2023 (i.e., Counts 2 and 3) should have merged. He also argues that the domestic violence and felonious assault offenses that occurred on March 12, 2023 (i.e., Counts 4 and 5) should have merged. Notably, the State does not contest this assignment of error.

{¶7} "We review de novo whether certain offenses should be merged as allied offenses under R.C. 2941.25." *State v. Bailey*, 2022-Ohio-4407, ¶ 6. The defendant bears the burden of establishing he or she is entitled to the protection provided by R.C. 2941.25 against multiple punishments for a single criminal act. *State v. Washington*, 2013-Ohio-4982, ¶ 18.

{¶8} When a defendant's conduct supports multiple offenses, courts apply the allied offenses analysis in R.C. 2941.25 to determine if the offenses merge or if the defendant may be convicted of separate offenses. *State v. Cass*, 2024-Ohio-2614, ¶ 19 (3d Dist.). The statute states:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

R.C. 2941.25. The Supreme Court of Ohio clarified certain aspects of this statute in *State v. Ruff*, 2015-Ohio-995. The court's syllabus held:

1. In determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must evaluate three separate factors—the conduct, the animus, and the import.

2. Two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable.

3. Under R.C. 2941.25(B), a defendant whose conduct supports multiple offenses may be convicted of all the offenses if any one of the following is true: (1) the conduct constitutes offenses of dissimilar import, (2) the conduct shows that the offenses were committed separately, or (3) the conduct shows that the offenses were committed with separate animus.

*Id.* at syllabus.

{¶9} The domestic violence statute provides that "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." R.C. 2919.25(A). The felonious assault statute prohibits someone from knowingly causing "serious physical harm to another." R.C. 2903.11(A)(1).

{¶10} Based on our review of the record, we agree with Cioffi that the domestic violence and felonious assault offenses on March 2, 2023 (i.e., Counts 2

and 3) should have merged and the domestic violence and felonious assault offenses on March 12, 2023 (i.e., Counts 4 and 5) should have merged. Based on Mindy's testimony, the March 2, 2023 incident consisted of a single act by Cioffi (pushing her down the porch stairs), was committed with a single animus, and resulted in the same harm. The same is true for the March 12, 2023 incident (single punch to face).

{¶11} Accordingly, Cioffi's first assignment of error is sustained. The trial court's judgment of sentence with respect to Counts 2 and 3 and with respect to Counts 4 and 5 is reversed, and this cause is remanded for the limited purpose of resentencing. *State v. Trigg*, 2016-Ohio-2752, ¶ 12-15 (2d Dist.) (trial court committed plain error in failing to merge the felonious-assault and domestic-violence convictions as allied offenses of similar import); *State v. Brown*, 2014-Ohio-728, ¶ 3-7 (2d Dist.) (where State conceded failure to merge counts, and trial court did not engage in merger analysis, reversing trial court's judgment and remanding matter for the limited purpose of merging counts and, after such merger, allowing the State to elect either count for sentencing).

### B. Second Assignment of Error

{¶12} In the second assignment of error, Cioffi argues that the trial court erred in allowing the State to present certain evidence of Cioffi's prior conduct through Mindy's testimony at trial. He claims the evidence should have been barred as impermissible prior-acts evidence pursuant to Evid.R. 404(B). Notably, Cioffi

does not challenge Brownlee's qualifications to testify as an expert witness on domestic violence or any of Brownlee's testimony.

{¶13} Cioffi specifically complains about Mindy's testimony on three topics concerning their relationship prior to the charged offenses. First, Mindy testified that Cioffi was more than just physically abusive. Specifically, when asked what was going on in her relationship with Cioffi at the time of the events in the indictment, Mindy testified they "weren't getting along at all" and "[t]here was abuse . . . in the relationship, there was control. There was emotional abuse, financial abuse, mental abuse, physical abuse." (Trial Tr. I at 164).

{¶14} Second, Mindy testified that Cioffi controlled all of the couple's money and she had to go to him for funds to purchase anything. According to Mindy, Cioffi was "the only one that had the money and only one that had the access to the money." (*Id.* at 166). She explained how she was dependent on him for food, medication (for her various medical issues), transportation, clothes, and even hygiene products. She summarized: "He was my only source of financial income." (*Id.* at 168). Prior to Mindy testifying about these first two topics, the trial court gave a limiting instruction to the jury concerning what they could and could not consider for purposes of this testimony.

{¶15} Third, Mindy testified Cioffi had an extra-marital affair. She explained she had suspected it based on phone records, confronted him about it, and

he admitted it. Mindy testified she was hurt and very upset because she still loved Cioffi and wanted to continue her relationship with him.

{¶16} In support of Cioffi's argument that the testimony at issue constituted impermissible prior-acts evidence under Evid.R. 404(B), he asserts that none of this testimony was relevant; it was not offered for any purpose set forth in Evid.R. 404(B)(2); and its only purpose was to make him look bad in front of the jury and suggest that he must have been abusive on the dates of the alleged offenses if he was abusive in the past.

{¶17} In response, the State contends the testimony on the first two topics provided the foundation for relevant expert testimony from Brownlee. Relatedly, the State says it was offered in response to Cioffi criticizing Mindy's actions and to help the jury understand why she did not immediately report the offenses to the police, remained in the abusive relationship with Cioffi, and lied to her doctors about the cause of her injuries. The State also argues that, because Cioffi "introduced and exploited his extra-marital affair to the benefit of his defense," the testimony relating to the affair was permissible. (Appellee's Brief at 5).

### 1.    Background

{¶18} Among his other defenses at trial, Cioffi sought to show that he was not present when at least some of the alleged incidents took place because he was living with another woman, that Mindy was angry about his infidelity, and that Mindy was, therefore, motivated to lie in order to retaliate against him. Another

part of the defense's trial strategy was to highlight Mindy's delayed reporting of the alleged incidents and lies to doctors about the cause of her injuries.

{¶19} Cioffi's counsel introduced these topics during opening statements and explored them during his cross-examination of Mindy. For example, he asked Mindy if Cioffi had been unfaithful to her and been periodically living with someone else—including permanently as of April 22, 2023. Mindy answered affirmatively. Defense counsel explored Mindy's delayed disclosure by having her admit it was not until May 7, 2023 that she reported the four separate alleged incidents to law enforcement—despite her claim she took the pictures of her injuries shortly after each offense. She also admitted to not telling her brother—whom she was staying with during portions of the time period the alleged incidents occurred—that Cioffi had beaten her up. Defense counsel was also successful in getting Mindy to admit she may have been untruthful to her doctors about how she had sustained injuries. The cross-examination concluded with the following exchange, where defense counsel affirmatively used Cioffi's control of their finances and infidelity in an attempt to show why Mindy might be falsely accusing Cioffi of the alleged offenses:

> Q: . . . And losing [Cioffi] or having him going to someone else, you would be losing quite a bit of financial support?
>
> A: I lost everything. I lost my house, I lost my cat, I lost my furniture. I lost my financial support.
>
> Q: But again - -

A: He's done this, I - - but it's a normal pattern for him, he's done it before. He's done it for the whole 23 years we were together, so - -

Q: And then you hadn't filed for a divorce?

A: No, because I have no money to do so.

(Trial Tr. II at 38).

**{¶20}** Afterward, Brownlee testified as an expert on domestic violence, without objection. Brownlee testified she had not done any analysis of this particular case, had never interacted with Mindy or Cioffi, and her testimony at trial was "to just generally discuss phenomena that [Brownlee had] experienced as an expert in domestic violence." (*Id*. at 59-60). Among other testimony, Brownlee explained that a woman who has been physically harmed by a husband or significant other over a period of time may have difficulty taking steps to seek outside help, may have a perceived inability of escaping the abuse, and—in a "counterintuitive manner"—may feel she needs "to stay close to the batterer" to "be sure that he won't hurt me." (*Id.* at 66-67). Brownlee said it is typical for such victims not to call the police when the abuse happens and to still love their abuser ("they love their abuser," but "hate the abuse"). (*Id.* at 83). She also said it can be difficult for such victims who are dependent on their abuser to leave the situation.

### 2. Applicable Law and Standards of Review

**{¶21}** "Evid.R. 404(B) does not contain a blanket prohibition on the introduction of other-acts evidence." *State v. Echols*, 2024-Ohio-5088, ¶ 30.

Instead, it "broadly prohibits the use of '[e]vidence of any other crime, wrong, or act . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.'" *Id.* at ¶ 24, quoting Evid.R. 404(B)(1). The rule goes on to reference permitted uses of other crimes, wrongs, or acts: "This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Evid.R. 404(B)(2). Importantly, "[t]hough Evid.R. 404(B) lists specific examples of permissible nonpropensity purposes for which other-act evidence may be admitted, its list is not exhaustive." *Echols* at ¶ 31. "The key [to admissibility] is that the evidence must prove something other than the defendant's disposition to commit certain acts." *State v. Hartman*, 2020-Ohio-4440, ¶ 22 ("evidence of other acts is admissible when the evidence is probative of a separate, nonpropensity-based issue").

{¶22} In considering other-acts evidence, "trial courts should conduct a three-step analysis." *State v. Williams*, 2012-Ohio-5695, ¶ 19. "The first step is to consider whether the other acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." *Id.* at ¶ 20, citing Evid.R. 401. "[I]t is not enough to say that the evidence is relevant to a nonpropensity purpose." *Hartman* at ¶ 27. "The nonpropensity purpose for which the evidence is offered must go to a 'material' issue that is actually in dispute between the parties." *Id.*

**{¶23}** The second step "is to consider whether evidence of the other crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other acts evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B)." *Williams* at ¶ 20. "[C]ourts must scrutinize the proponent's logic to determine exactly how the evidence connects to a proper purpose without relying on any intermediate improper-character inferences." *Hartman* at ¶ 23.

**{¶24}** "The third step is to consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice." *Williams* at ¶ 20, citing Evid.R 403. Given that the evidence rules do not bar all prejudicial evidence but only that which is unfairly prejudicial, "the primary concern is that the evidence creates an undue tendency to lead the factfinder to find guilt based on an impermissible character-based inference." *Echols*, 2024-Ohio-5088, at ¶ 41; *see also State v. Creech*, 2016-Ohio-8440, ¶ 36 (if the evidence arouses the jury's emotional sympathies, evokes a sense or horror, or appeals to an instinct to punish, the evidence may be unfairly prejudicial). Such evidence must be excluded when its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. *Hartman*, 2020-Ohio-4440, at ¶ 29, citing Evid.R. 403(A).

**{¶25}** Under Evid.R. 404(B), "[t]he determination of whether other-acts evidence is admitted for a permissible purpose is a question of law, which we review

-12-

de novo." *Echols*, 2024-Ohio-5088, at ¶ 30, citing *Hartman*, 2020-Ohio-4440, at ¶ 22. However, the portion of our analysis regarding whether the probative value of the other-acts evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury is reviewed for an abuse of discretion. *Id*. at ¶ 38-39, citing *Hartman* at ¶ 30. A trial court abuses its discretion when its conduct is unreasonable, arbitrary, or unconscionable. *State v. Hill*, 2022-Ohio-4544, ¶ 9.

### 3. Analysis

{¶26} Looking to the first step of the analysis from *Williams*, we find the testimony at issue was relevant. Although there are various hurdles and limitations to do so, the Supreme Court of Ohio has decided that expert testimony concerning battered-woman syndrome can be introduced by the State through a qualified witness under certain circumstances, in order to aid the trier of fact in understanding the victim's actions. *State v. Haines*, 2006-Ohio-6711, ¶ 44-47, 50, 65; *see also Williams*, 2012-Ohio-5695, at ¶ 22 (victim's testimony about prior act was relevant to rebut defenses suggested during the defendant's opening statement). "'Generally, battered woman syndrome testimony is relevant and helpful when needed to explain a complainant's actions, such as prolonged endurance of physical abuse accompanied by attempts at hiding or minimizing the abuse, delays in reporting the abuse, or recanting allegations of abuse.'" *Haines* at ¶ 44, quoting *People v. Christel*, 449 Mich. 578, 580 (1995). For example, in *Haines*, testimony concerning

the defendant's psychological abuse of the victim and controlling behavior was relevant to support testimony by an expert witness. *Id.* at ¶ 44-45, 50. The defense on cross-examination of the victim attacked her behavior following the incidents of alleged abuse—she did not report the abuse, she gave differing explanations regarding some of her injuries, and she remained in the relationship. *Id.*

{¶27} Here, in view of Cioffi's attacks on Mindy's delayed reporting of the alleged incidents, lying to her doctors, and decision to remain in her relationship with Cioffi, we find her testimony at issue concerning past abuse and control was relevant. It related to a material issue in dispute between the parties. *See id.*; *State v. Harris*, 2023-Ohio-3994, ¶ 98-99 (10th Dist.) (victim's testimony concerning previous threats made by defendant was relevant where part of defense's trial strategy was to undermine the veracity of victim's allegations by emphasizing her delay in reporting the offense).

{¶28} Next, the State's purpose in eliciting the testimony concerning past abuse and conrol was to provide the necessary foundation for Brownlee's expert testimony—a prerequisite to allowing the State to introduce expert testimony on battered-woman syndrome in a domestic violence case. *Haines* at ¶ 46; *State v. McKelton*, 2016-Ohio-5735, ¶ 163-164 (prosecutors established an adequate foundation for the expert testimony by presenting evidence that defendant and victim were in a cycle of domestic violence). It was presented for a "legitimate

purpose," not to prove Cioffi's character "in order to show that the conduct was in conformity with that character." *Williams*, 2012-Ohio-5695, at ¶ 20, 23.

**{¶29}** Generally, expert testimony about battered-woman syndrome may be used if there is some evidentiary foundation that a party or witness to the case is a battered woman and that party or witness has behaved in such a manner that a jury would be aided by expert testimony providing an explanation for the behavior. *McKelton* at ¶ 163; *Haines*, 2006-Ohio-6711, at ¶ 46. The testimony at issue here established the foundation and relevance for portions of Brownlee's testimony. *Haines*, 2006-Ohio-6711, at ¶ 45-46, 50; *State v. Drew*, 2008-Ohio-2797, ¶ 53 (10th Dist.). One of Cioffi's trial strategies was to suggest Mindy had fabricated the incidents alleged in the indictment because she delayed in reporting them. Consequently, Mindy's testimony was pertinent for the jury to understand her actions and as foundational testimony in order for Brownlee to offer her expert opinion. *Drew* at ¶ 54; *see also State v. Lucas*, 2020-Ohio-1602, ¶ 85, 88 (8th Dist.) (victim's testimony was not offered to prove defendant acted in conformity with his character as an abusive, jealous, or controlling boyfriend, but rather to show the relationship was strained). Thus, we disagree with Cioffi's assertion that the only purpose of this testimony was to make him look bad in front of the jury and suggest that he must have been abusive on the dates of the alleged offenses because he was abusive in the past. Additionally, the trial court gave a limiting instruction to the

jury concerning what they could and could not consider for purposes of that testimony. *See Williams*, 2012-Ohio-5695, at ¶ 23.

**{¶30}** Regarding the third step, the trial court did not abuse its discretion in determining the probative value of the testimony at issue was not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. This testimony was necessary foundation to permit the expert testimony. In addition it was probative in attempting to counter some of Cioffi's defenses. We further note that Cioffi does not challenge Brownlee's expert testimony; his challenge is limited to Mindy's testimony. *Compare Haines*, 2006-Ohio-6711, at ¶ 55-58, 61, 63 (trial court erred in permitting certain testimony from battered-woman-syndrome expert witness without tailoring the scope of the State's questioning or instructing the jurors as to the limits of the expert's testimony, such that the expert's testimony "crossed the line" and was unfairly prejudicial).

**{¶31}** We also find Mindy's testimony that Cioffi had an extra-marital affair to be relevant, presented for a legitimate purpose, and not unfairly prejudicial, particularly given Cioffi's own reliance on his infidelity to show he may have been elsewhere during the alleged incidents and that Mindy had motivation to falsely accuse him of the alleged offenses. *See Williams*, 2012-Ohio-5695, at ¶ 22; *State v. Hymes*, 2021-Ohio-3439, ¶ 43-44 (7th Dist.) (to establish a relevant, permissible use of other-acts evidence, the State may rely on the defendant's pretrial statements that a particular defense will be presented in the case).

**{¶32}** Cioffi's second assignment of error is overruled.

## IV. CONCLUSION

**{¶33}** For the foregoing reasons, Cioffi's first assignment of error is sustained and his second assignment of error is overruled. Having found error prejudicial to the appellant in the particulars assigned and argued, we vacate the judgment of sentencing issued by the Logan County Court of Common Pleas with respect to its failure to merge Counts 2 and 3 and its failure to merge Counts 4 and 5, and we remand this cause for further proceedings consistent with this opinion. In all other respects, the trial court's judgment is affirmed.

*Judgment Affirmed in Part,*
*Reversed in Part and*
*Cause Remanded*

**WALDICK, P.J. and ZIMMERMAN, J., concur.**

**/jlm**